FILED

2009 APR - 1   PM 3:52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1   AHILAN T. ARULANANTHAM (SB# 237841)
    (aarulanantham@ACLU-SC.ORG)
2   MARISOL ORIHUELA (SB# 261375)
    (morihuela@ACLU-SC.ORG)
3   ACLU OF SOUTHERN CALIFORNIA
    1313 W. 8th St.
4   Los Angeles, CA  90017
    Tel:  (213) 977-5211
5   Fax:  (213) 977-5299

6   LINTON JOAQUIN (SB# 73547)
    (joaquin@nilc.org)
7   KAREN C. TUMLIN (SB# 234691)
    (tumlin@nilc.org)
8   NATIONAL IMMIGRATION LAW CENTER
    3435 Wilshire Blvd., Suite 2850
9   Los Angeles, CA  90010
    Tel:  (213) 639-3900
10  Fax:  (213) 639-3911

11  W. TOLIVER BESSON (SB# 50123)
    (toliverbesson@paulhastings.com)
12  JAMIE BRODER (SB# 75927)
    (jamiebroder@paulhastings.com)
13  JAMES W. GILLIAM, JR. (SB# 229479)
    (jamesgilliam@paulhastings.com)
14  ELEANOR K. MERCADO (SB # 240028)
    (eleanormercado@paulhastings.com)
15  AMANDA B. GILMAN (SB # 255573)
    (amandagilman@paulhastings.com)
16  PAUL, HASTINGS, JANOFSKY & WALKER LLP
    515 S. Flower St., 25th Floor
17  Los Angeles, CA  90071
    Tel:  (213) 683-6000
18  Fax:  (213) 627-0705

19  *Counsel for Plaintiffs*
    [Additional Counsel Appear on Next Page]

20

21              **UNITED STATES DISTRICT COURT**

22          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

23  JULIO CASTELLANO, ABELARDO          Case No. **CV09-2281 PA VBK**
    CHAVEZ FLORES, RAMON
24  GONZALEZ, ALLA SUVOROVA, on         **COMPLAINT FOR
    behalf of themselves and all others   CLASSWIDE DECLARATORY
25  similarly situated, and NATIONAL     AND INJUNCTIVE RELIEF
    LAWYERS GUILD,                       FOR VIOLATIONS OF THE
26                                       FIRST, FOURTH, AND FIFTH
                Plaintiffs,              AMENDMENTS TO THE
27       vs.                             UNITED STATES
                                         CONSTITUTION AND TO THE
28  JANET NAPOLITANO, in her capacity    IMMIGRATION AND**

1    as Secretary of the Department of
Homeland Security; ERIC H. HOLDER
2    JR., in his capacity as Attorney General of
the United States; JOHN P. TORRES,
3    Acting Assistant Secretary, U.S.
Immigration and Customs Enforcement;
4    JAMES T. HAYES JR., Director, Office
of Detention and Removal Operations,
5    ICE; ROBERTO ARMENDARIZ,
Assistant Field Office Director, ICE,

6
           Defendants.
7

**NATIONALITY ACT, 8 U.S.C.
§§ 1229a(b); 1231(g), 8 C.F.R. §§
287.3, 1236.1, 1003.19; AND THE
PERMANENT INJUNCTION IN
*ORANTES–HERNANDEZ v.
MEESE*, NO. CV-82-1107KN.**

**CLASS ACTION**

8    *Additional Counsel for Plaintiffs*:
9    JUDY RABINOVITZ (Admitted in New York)
(jrabinovitz@aclu.org)
10   AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
11   125 Broad St., 18th Floor
12   New York, NY 10004
Telephone: (212) 549-2618
13   Facsimile: (212) 549-2654
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                              COMPLAINT FOR CLASSWIDE
                         DECLARATORY AND INJUNCTIVE RELIEF

**PRELIMINARY STATEMENT**

1.    Plaintiffs and class members are civil immigration detainees in the custody of the United States Immigration and Customs Enforcement agency ("ICE"), an arm of the Department of Homeland Security ("DHS").  Plaintiffs bring this lawsuit to remedy egregious statutory and constitutional violations occurring at an immigration detention facility in the middle of downtown Los Angeles.  At that facility, known as "B-18," (its room number in the basement of a downtown Federal Building), immigration authorities routinely detain people for weeks at a time without providing them with soap, feminine sanitary products, changes of clothing, toothbrushes, toothpaste, showers, recreation, or many of the other rudimentary necessities of decent human life.  In addition, B-18 is regularly overcrowded, causing violence, safety hazards, and humiliation.

2.    Many of the problems described in the Complaint arise from the fact that B-18 was not intended for use as a long-term detention facility; it is designed to hold people for short periods of time, probably no more than twelve hours.  However, in a perverse distortion of the facility's purpose, immigration authorities routinely circumvent this limitation by shuttling inmates to jails in the local area, where they stay overnight and on weekends.  The next morning, authorities shuttle the detainees back to B-18 to begin the cycle all over again.  As a result, Defendants incarcerate detainees at B-18 for weeks and sometimes even over a month.  Although civil immigration detainees at B-18 occasionally spend the night at the facility, where they are forced to sleep on the floor, most detainees there get shuttled every day from B-18 to a local jail.

3.    Because they stay at local jails only at nights and over weekends, detainees are unable to access the full range of services and facilities that may be available to other inmates at the local jails and are available at long-term immigration detention facilities.  For example, detainees are rarely provided showers and soap, and never receive changes of clothing, recreation, or other

-1-

1    necessary items withheld from them at B-18. The constant shuttling also often

2    interferes with detainees' ability to get adequate rest while in custody. The

3    cumulative effect of the government's shuttling program works to deprive detainees

4    of their basic human needs, in violation of the Due Process Clause of the Fifth

5    Amendment to the United States.

6          4.    The shuttling program also effectively cuts detainees off from

7    contact with the outside world. Detainees cannot send or receive mail of any sort,

8    have no access to paper or pens, law libraries, or means for private telephone

9    conversations with legal representatives. They have no system to lodge

10    administrative complaints. As a result, the conditions under which these detainees

11    live violate their right of access to courts, their right to seek representation of

12    counsel, and their rights under the First Amendment.

13          5.    The government also routinely fails to make and provide notice

14    of bond determinations for those detained at B-18, and fails to make available the

15    review process for those determinations as required by immigration regulations as

16    well as the Fourth and Fifth Amendments. As a result, detainees who qualify for

17    release on bond remain detained while being shuttled for weeks at a time.

18          6.    This action is brought (a) by and on behalf of the class of

19    persons who are now or will be detained at B-18, and (b) by and on behalf of an

20    association of lawyers who represent detainees and other persons in the Los

21    Angeles area seeking asylum and other forms of relief from deportation, including

22    individuals who are or will be detained at B-18.

23          7.    Many of the issues raised in this Complaint are the same as, or

24    substantially identical to, issues that were addressed by this Court in *Orantes-*

25    *Hernandez v. Meese*, 685 F. Supp. 1488 (C.D. Cal. 1988), *aff'd sub nom. Orantes-*

26    *Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990). In *Orantes*, this Court

27    entered a permanent injunction governing the former Immigration and

28

-2-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1    Naturalization Services'[1] ("INS") treatment of the class of citizens and nationals of

2    El Salvador eligible to apply for asylum who have been or will be taken into

3    custody by INS agents pursuant to 8 U.S.C. § 1357.  In particular, the Court's

4    injunction sought to redress violations of the Plaintiff class members' rights to

5    representation by counsel and access to the courts, which the Court found were

6    undermined by the sub-standard conditions at immigration detention facilities.  The

7    injunction requires, among other things, that the INS: (1) ensure the privacy of

8    attorney-client communications; (2) allow class members to receive and possess

9    legal materials, including legal mail; (3) provide class members with adequate

10   access to law libraries; (4) provide class members with access to writing materials;

11   (5) refrain from employing coercion when processing class members; (6) provide

12   class members with updated lists of low-cost or free legal service providers, and

13   make those lists freely available at detention locations; (7) provide class members

14   with a specified *Orantes* advisal of rights; and (8) make telephones available to

15   detained class members.[2]

16          8.     The proposed Plaintiff class in this action includes individuals

17   who are also members of the *Orantes* class, among them one of the named

18   Plaintiffs in this action.  As to those Plaintiffs, the permanent injunction entered in

19   *Orantes* is being violated by the policies and practices described in this Complaint.

20   //

21   //

22   [1] The former INS was dissolved in March 2003, and was replaced by DHS.  Two

23   DHS sub-agencies, ICE and the Customs and Border Patrol ("CBP"), are now responsible for immigration enforcement and detention.

24   [2] On November 17, 2005, DHS' sub-agencies, ICE and CBP moved to dissolve the

25   *Orantes* injunction.  On July 26, 2007, this Court issued a ruling modifying the injunction but keeping in place the provisions relating to: (1) private attorney-client

26   communications; (2) class members' ability to receive and possess legal materials, including legal mail; (3) access to law libraries; (4) access to writing materials;

27   (5) refrain from employing coercion when processing class members; (6) the provision of legal service provider lists; (7) the provision of an *Orantes* advisal of

28   rights, and (8) telephone availability.  *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825 (C.D. Cal. 2007).

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  Because this lawsuit alleges violations of the United States Constitution as well as violations of federal statutes and regulations, it raises questions of federal law.  The Court also has subject matter jurisdiction under 28 U.S.C. § 2241 because Plaintiffs allege that they are detained by the federal government and in violation of the Constitution and laws of the United States.  Finally, the Court has subject matter jurisdiction under 28 U.S.C. § 1651 to enforce the permanent injunction it entered in *Orantes-Hernandez v. Holder*, Docket No. 82-1107-MMM(VBKx) (C.D. Cal.).[3]

10.    This Court has the authority to grant injunctive relief, declaratory relief, and other related relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2243, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (e)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.  Venue is proper pursuant to 28 U.S.C. § 2241(d) because Plaintiffs are incarcerated at a facility within this district, and this Court has personal jurisdiction over all Respondents who maintain custody over Plaintiffs.

## PARTIES

### I.    PLAINTIFFS

#### Associational Plaintiff

12.    Plaintiff National Lawyers Guild ("NLG") is the Los Angeles chapter of an organization of progressive attorneys.  A number of those attorneys represent immigrants, including detained immigrants.  Several NLG attorneys have represented and continue to represent people detained at B-18.  NLG attorneys represent clients in removal hearings before immigration courts, in administrative

---

[3] The Due Process Clause and Article III also require that some judicial forum remain available for Plaintiffs to bring several of their claims, including those concerning the legality of their continued detention.  *INS v. St. Cyr*, 533 U.S. 289 (2001).

1   appeals, and occasionally before the federal courts.  Some NLG attorneys also

2   provide legal information packets to their detained clients.  The NLG attorneys'

3   ability to provide these information packets to clients is severely restricted because

4   there is no system to receive mail at B-18.  If there were an effective and reliable

5   mail system in place at B-18, some NLG attorneys would routinely mail these

6   packets, as well as other legal documents pertinent to the client's legal case, to

7   detainees at B-18.  In addition, NLG attorneys face ongoing obstacles to

8   gaining access to their clients who are detained at B-18, including but not limited

9   to, being unable to communicate with their client in a timely manner due to the

10  shortage of attorney rooms at B-18, as well as being unable to conduct attorney-

11  client meetings in private while at the facility.  The NLG attorneys' ability

12  to effectively represent their clients is jeopardized due the Defendants' policies and

13  procedures in force at B-18, insofar as those policies and procedures obstruct and

14  restrict attorneys' access to their detained immigrant clients.

15          <u>Individual Plaintiffs</u>

16          13.    Plaintiff Julio Castellano is a forty-year-old Salvadoran who has

17  been detained at B-18 for over one week.  Since Castellano's detention began, he

18  has not been able to change his clothes, use shampoo, deodorant, or a razor to

19  shave.  Castellano was denied the use of a toothbrush and toothpaste for seven days

20  straight.  When he arrived at B-18, immigration officials kept him all night at B-18,

21  forcing him to sleep on the floor.  Since then, he has not been able to use pencil or

22  paper, the mail, or had access to a law library.  If Castellano could access a law

23  library, he would prepare the necessary filings to fight his immigration case and

24  complain about the poor conditions of confinement.  He also suffers from an allergy

25  that causes a rash on his face, but despite making requests, he has been denied

26  medical treatment for this condition.

27          14.    As a Salvadoran who fears return to his country, Castellano is a

28  member of the *Orantes* class.  However, upon processing, he was asked to sign

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1  documents to facilitate his removal despite expressing fear of returning to El

2  Salvador, was not provided the *Orantes* advisal, and was not provided a list of legal

3  services providers.   During his detention at B-18, Castellano has been unable to

4  make private telephone calls to attorneys, due to a number of reasons, including the

5  lack of privacy panels to ensure private phone calls, the recording of his calls, and

6  because for several days none of the telephones were in working order.

7          15.    Plaintiff Abelardo Chavez Flores is a fifty-two-year-old

8  Mexican man who spent approximately one and a half months detained at B-18.  He

9  is currently in immigration proceedings, and upon information and belief will return

10  to B-18 if his discretionary release on an order of supervision is revoked for any

11  reason, including the entry of a final order of removal against him in his case.

12  While incarcerating him at B-18, immigration authorities shuttled Chavez Flores to

13  local jails on most nights, but also forced him to sleep on the floor at B-18 itself on

14  approximately five to ten occasions.  During his time there, they consistently denied

15  him access to a doctor, detained him for over eighteen hours in overcrowded and

16  dirty holding rooms, and did not provide him with any change of clothing.  He was

17  also not provided with any soap while he was detained at B-18.  At one point he

18  went for two weeks without being able to brush his teeth.  He also was routinely

19  denied showers, and never permitted any recreation of any sort.  Despite his

20  requests, the immigration authorities also denied Chavez Flores access to his legal

21  documents, which they confiscated from him.  As a result, he had no access to

22  documents that he needed to file an appeal with the Board of Immigration Appeals.

23  He also had no access to pens, pencils, legal materials, a law library, or paper with

24  which to file his appeal.  He also could not file any administrative complaint

25  regarding these conditions.  Even after a volunteer attorney assisted him in

26  preparing his appeal, immigration officials at B-18 denied him use of the mail, such

27  that Chavez Flores could neither mail his appeal himself nor receive notification at

28  B-18 that his appeal had successfully been filed.

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

16.    Plaintiff Ramon Gonzalez is a thirty-six-year old Mexican national who has been detained by ICE since March 17, 2009. While he has been routinely shuttled between area jails and B-18, he has spent as many as 24 hours in a row at B-18. In fact, on or about March 30, 2009, while staying at a local jail, he was woken at approximately 1:00 a.m. and transported to B-18. He remained at B-18 for 24 hours until 1:00 a.m. the following day. Other days he has only been permitted to sleep for a couple of hours a night. Often times he has spent as many as 20 hours per day at B-18. Upon information and belief, while some detainees are taken to local jails at night, the sick detainees are kept overnight at B-18 because the local jails will not accept them. Like many other people incarcerated in the B-18 shuttling program, since arriving, Gonzalez has had no access to soap, toothpaste, a toothbrush, showers, or many of the other rudimentary necessities of decent human life, while incarcerated at B-18. Additionally, aside from meals, at which he receives other liquids, Gonzalez has been denied drinking water. The only available water is from the sink, and because there is no soap for use with the sink, Gonzalez would have been required to drink from the sink without having washed his hands.

17.    Plaintiff Alla Suvorova is a twenty-five-year old immigrant who was detained at B-18 for approximately two weeks in late December 2008 and early January 2009. She is currently in immigration proceedings, and upon information and belief will return to B-18 if her release on an order of supervision is revoked for any reason, including the entry of a final order of removal against her in her case. During her detention at B-18, she was shuttled every night to local jails where she spent every night sleeping on the floor because the top bunk of the beds at the local jails were near the ceiling vents that poured out unbearably cold air. Authorities also denied her any access to physical exercise or other recreation. They held her all day in a holding room at B-18 where a toilet was stopped up for two weeks, and never provided soap. She also received no change in clothing the entire time.

-7-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1    During these two weeks, no one informed her of whether a determination had been

2    made to release her on bond, or of her right to seek review of that determination

3    before an immigration judge.

4    **II.    DEFENDANTS**

5        18.    Defendant Janet Napolitano is the Secretary of DHS, and, as

6    such, is charged with enforcing and administering all laws regarding immigration

7    and customs. Defendant Napolitano also is specifically authorized by Congress to

8    allocate funds to provide necessary clothing, medical care, housing, and security for

9    immigration detainees. *See, e.g.*, 8 U.S.C. § 1103; 6 U.S.C. §§ 112, 251 and 557.

10   All DHS agents and employees act pursuant to the delegation of authority vested in

11   the DHS Secretary. Defendant Napolitano is a legal custodian of the detainees at

12   B-18, and is sued in her official capacity.

13       19.    Defendant Eric H. Holder, Jr. is the Attorney General of the

14   United States. Pursuant to 8 U.S.C. § 1231(g)(1), he is charged with arranging for

15   "appropriate" places of detention for aliens detained pending removal or a decision

16   on removal. He also oversees the Executive Office of Immigration Review,

17   including all of the immigration judges. The immigration judges are responsible

18   for re-determining bond decisions made by ICE employees. *See* 8 C.F.R. §

19   1003.19. Defendant Holder is sued in his official capacity.

20       20.    Defendant John P. Torres is the Acting Assistant Secretary for

21   ICE, the arm of the DHS charged with detaining and removing non-citizens

22   pursuant to federal immigration law. As the senior official at ICE, Defendant

23   Torres sets detention and removal priorities and has ultimate responsibility for the

24   safety and well-being of persons detained in ICE custody. The Office of Detention

25   and Removal Operations ("DRO"), a division of ICE, manages the daily detention

26   of approximately 30,000 immigration detainees. Defendant Torres supervises the

27   official conduct of all DRO officials and may appoint and remove subordinate

28   defendants named herein. As Acting Assistant Secretary in charge of immigration

-8-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1    detention, Defendant Torres controls the allocation of monies in the DHS-ICE

2    budget for detention and removal operations and, specifically, the care and

3    treatment of ICE detainees. He is a legal custodian of the detainees at B-18, and is

4    sued in his official capacity.

5        21.    Defendant James T. Hayes Jr. is the Director of DRO for ICE

6    and is responsible for the safe, secure, and humane housing of immigration

7    detainees in ICE custody. The primary responsibility of DRO is to provide

8    adequate and appropriate custody management of immigration detainees until a

9    decision is rendered regarding their removal. Staff at ICE-DRO headquarters

10    oversee annual inspections of facilities used to house immigration detainees, and

11    assess them for compliance with ICE Detention Standards. Defendant Hayes

12    oversees the DRO workforce, including ICE field officers, deportation officials,

13    compliance review officers, and officers assigned to detention facilities. Defendant

14    Hayes is responsible for setting DRO policy with respect to the detention of foreign

15    nationals, and for the administration and operation of DRO. He is a legal custodian

16    of the detainees at B-18, and is sued in his official capacity.

17        22.    Defendant Roberto Armendariz is the Assistant Field Office

18    Director for the ICE Los Angeles Field Office, which has jurisdiction over B-18

19    and official control over detention and removal operations at the facility. He is a

20    legal custodian for individuals detained at B-18, and is sued in his official capacity.

21        23.    At all relevant times, all Defendants were acting under color of

22    federal law, pursuant to their authority as officials, agents, contractors, or

23    employees of U.S. governmental agencies or entities.

24                    **FACTUAL ALLEGATIONS**

25        24.    Many of the problems described in the Complaint arise from the

26    fact that B-18 is designed to hold people for short periods of time, probably less

27    than twelve hours, but instead is being used to incarcerate people for weeks at a

28    time through the government's shuttling program. Upon information and belief, the

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1    shuttling occurs between B-18 and several local jails, including those in Alhambra,

2    Glendale, and Monterey Park, as well as between B-18 and the Mira Loma

3    Detention Center in Lancaster, California.

4    　　　　　25.    The drastic conditions problems resulting from the shuttling

5    program at B-18 were exposed over five months ago, when the Daily Journal

6    reported on the lengthy detention of people at B-18 "without access to medical care,

7    showers, toothbrushes or beds." Sandra Hernandez, *Detainees Say Facility Denies*

8    *Basic Care*, Daily Journal, October 17, 2008. At the time, ICE officials stated that

9    B-18 "does not detain/hold individuals," and an ICE spokesperson reportedly

10    stated: "I'm told detention standards do not apply [at B-18] because it's not a

11    detention center." *Id.* However, B-18 clearly is a detention center for all relevant

12    purposes; the persons housed at the facility for extended periods of time are

13    deprived of their liberty, are in the custody of Defendants, and are therefore entirely

14    dependent on the government for their basic human needs, often for weeks at a

15    time.

16    **I.    CONDITIONS OF DETENTION**

17    　　　　　*A.    Defendants Fail to Provide Plaintiffs Access to Basic Personal*

18    　　　　　　　*Hygiene Products and Sanitary Facilities*

19    　　　　　26.    Defendants regularly incarcerate detainees at B-18 for ten to

20    eighteen hours per day. At night and over weekends, the detainees are shuttled to

21    area jails. In the early morning hours, the immigration authorities shuttle the

22    detainees back to the B-18 basement facility, where they remain until the late

23    evening, when the authorities transfer them back to the local jails to sleep. The

24    authorities repeat this process each day.

25    　　　　　27.    B-18 is not equipped to house detainees for any substantial

26    period of time. B-18 has no showers, no soap, no toothbrushes, no toothpaste, no

27    deodorant, no razors, and no access to basic medication. In addition, female

28    detainees are often denied access to feminine sanitary products. The local jails that

-10-

1  receive detainees for a brief period of time each evening and over the weekends

2  similarly provide few or none of these basic necessities.

3       28.    Detainees at B-18 have no access to drinking water or cups. To

4  drink water, some detainees have had to cup their hands to the faucet of the sink

5  located immediately next to the commode. Because ICE does not regularly clean

6  the commode or the sink, this water sometimes smells foul and looks dirty.

7  Detainees are only provided liquids such as milk and juice at mealtimes, but are

8  never provided any drinking water. Plaintiff Castellano states that he does not

9  drink the water because of the smell and yellow color.

10      29.    B-18 contains a number of hold rooms where detainees are

11  housed in groups. Male and female detainees are held in separate hold rooms.

12  Upon information and belief, B-18 contains five to six hold rooms, each routinely

13  housing forty or fifty detainees, one for female detainees and the others for men.

14  On information and belief, at times over one hundred detainees have been held in

15  one hold room at B-18.

16      30.    The typical male hold room has one open commode, either one

17  urinal or a second open commode, and one sink. The rooms never contain any soap

18  or other similar sanitation product. As a result, male detainees suffer ongoing

19  unsanitary conditions because they cannot wash their hands after using the

20  commode.

21      31.    The female hold room has two open commodes and two sinks.

22  The room also contains no soap or similar sanitation product. As a result, female

23  detainees also suffer ongoing unsanitary conditions by not being able to wash their

24  hands after using the commode.

25      32.    Further, when commodes in either the female or male detention

26  room overflow, which they do regularly, immigration officials do not attempt to fix

27  the commode or promptly clean the rooms, and regularly deny detainees cleaning

28  supplies when requested. For example, Plaintiff Suvorova was detained at B-18 for

-11-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1  approximately two weeks in late December 2008 and early January 2009. During

2  that period, one of the two commodes in the female detention room was stopped up,

3  and never fixed.

4       33.    Immigration officials regularly do not provide sanitary napkins

5  to female detainees. They frequently ignore the requests of female detainees who

6  ask for sanitary products during menstruation. Because immigration authorities

7  also do not provide detainees with a clean change of underwear or clothing, or soap

8  to wash their own clothes, their refusal to provide sanitary products leads to

9  grievously unsanitary conditions and humiliation for menstruating female

10  detainees.

11       34.    Immigration officials at B-18 provide neither toothpaste nor

12  toothbrushes to detainees. Detainees shuttled to local jails often do not receive

13  toothpaste or toothbrushes there either, sometimes because they arrive late in the

14  day. Immigration officials routinely ignore detainees' requests for toothbrushes and

15  toothpaste. Occasionally, officials provide such detainees with a sponge—but no

16  toothpaste—with which to clean their teeth. However, the guards never provide

17  toothpaste and toothbrushes at B-18, regardless of whether the detainee has a dental

18  condition. For example, Plaintiff Chavez Flores was unable to brush his teeth with

19  a toothbrush and toothpaste for two consecutive weeks, and Plaintiff Castellano has

20  been unable to use a toothbrush and toothpaste for a week.

21       B.    *Defendants Do Not Provide Detainees with Clean Clothing*

22       35.    People often arrive at B-18 after being taken into custody by

23  immigration officials, and therefore, are often wearing their own clothes.

24       36.    Immigration authorities do not provide any changes of clothing

25  or undergarments to people incarcerated at B-18, regardless of the length of their

26  stay. In addition, detainees have no access to laundry facilities or supplies with

27  which to wash their own clothing. Some detainees have been in the custody of

28  immigration officials for weeks without a change of clothes. Plaintiff Suvorova

-12-

1  wore the same clothes she was arrested in for the entire two weeks of her detention,

2  even though her friend had attempted to drop off a change of clothing. With the

3  exception of a pair of socks, ICE refused to allow Ms. Suvorova to accept the

4  change of clothes. When Plaintiff Castellano's family brought clothes for him to B-

5  18, immigration authorities refused to accept any clothing except a jacket. Because

6  Castellano has no access to laundry facilities, he is forced to wash his clothes when

7  he is given a small bar of soap for showering at a jail. Plaintiff Chavez Flores was

8  forced to wear the same clothing for the entire time he was detained – over a month

9  and a half.

10       37.    At times, the temperatures in B-18 or local jails are so

11  uncomfortably cold that detainees cannot sleep. Despite complaints from detainees,

12  immigration officials do not provide appropriate clothing when facility

13  temperatures become extremely cold, forcing the detainees to bear extreme

14  temperatures with inadequate clothing. Plaintiff Suvorova was forced to sleep on

15  the floor of her cell for fourteen consecutive nights because the ceiling air

16  conditioning vent made it impossible to sleep on the top bunk.

17       C.    *B-18 Is Overcrowded and Detainees Are Subjected to Poor*

18            *Sleeping Conditions*

19       38.    Defendants have placed no beds anywhere in the rooms at B-18;

20  benches are the only furniture to sit or sleep on in the hold rooms, and when these

21  rooms become overcrowded, detainees are forced to sit on the concrete floor

22  without mattresses. The hold rooms at B-18 are lined with benches around their

23  perimeters. When these rooms become overcrowded, the benches do not provide

24  enough space for detainees to sit on, which forces detainees to sit on the concrete

25  floor without mattresses. At times, the rooms at B-18 become so crowded that

26  detainees have to take turns between standing and sitting on the floor, because there

27  is not even enough room on the floor for all the detainees to sit. On at least one

28

-13-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1   occasion, when Plaintiff Chavez Flores was present, the hold room was so crowded
2   that the detainees could not all sit at the same time to eat their meals.

3          39.    At times, the holding rooms get so overcrowded that fighting
4   between detainees breaks out.  Crowding also forces some detainees to sit in close
5   proximity to the urinals and commodes, subjecting them to foul smells and
6   humiliation.  In addition, for at least several weeks, when Plaintiff Chavez Flores
7   was present, one of the B-18 rooms became so crowded that detainees could not
8   wait to use the bathroom, and had to urinate in the sink, which is the only source of
9   consistently-available drinking water at B-18.

10         40.    Defendants do not permit people incarcerated at B-18 to take
11   breaks during which they can leave the holding rooms; detainees even have to eat in
12   the rooms.  When B-18 gets overcrowded, detainees cannot move around freely
13   even within the rooms.  Thus, overcrowding forces detainees to sit on benches or
14   concrete floors for hours on end, receiving virtually no physical exercise, which
15   severely taxes their physical and mental well-being.

16         41.    On occasion, immigration authorities have incarcerated
17   detainees overnight at B-18.  Immigration officials provide no beds, mattresses,
18   blankets, or pillows to detainees they hold overnight at B-18.  Consequently, when
19   forced to stay overnight, detainees must sleep on the floor without any mattress,
20   pillows, or blankets.  On the night that he arrived at B-18, Plaintiff Castellano was
21   forced to sleep on the floor of the holding room with approximately forty other
22   detainees, with no mattress, pillow, or blanket.

23         42.    In late October or early November 2008, ICE officials left a
24   seventy-six-year-old man overnight for three consecutive nights at B-18.  They left
25   him to sleep on the cement floor without a mattress, pillow, or blanket.  The
26   detainee shared that detention room with ten other detainees overnight.  Authorities
27   left all ten of the detainees on the cement floor with no mattress, pillow, or blanket.

28

-14-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

43.    In addition, some of the jails which house detainees overnight routinely leave the lights on all night, or cool the sleeping areas to extremely low temperatures.  These conditions disrupt the detainees' ability to sleep, which, coupled with late night or early morning shuttling between detention centers, results in sleep deprivation.  Plaintiff Suvorova could not sleep on average more than two to four hours each night, because of these conditions.

D.    *Defendants Provide No Recreation to Detainees at B-18*

44.    Immigration authorities force detainees to remain inside B-18 in holding rooms throughout the entire day.  They spend approximately ten to eighteen hours of the day in one room, without any breaks or meaningful physical mobility.  The authorities do not permit them to move outside of their holding rooms at B-18.  There are no indoor or outdoor recreation facilities at B-18.

45.    When immigration authorities shuttle detainees to local jails for the evening, the detainees receive neither indoor, nor outdoor, exercise opportunities.  At the local jails on evenings and weekends, detainees spend approximately six to fourteen hours in small cells and sometimes in a slightly larger day room.

46.    Detainees have no access to reading materials or other recreational activities at the local jails.  When detainees request to go outside or get physical exercise, immigration officials and jail guards deny their requests.

## II.    INTERFERENCE WITH ACCESS TO COURTS AND REPRESENTATION OF COUNSEL

47.    The authorities who run B-18 and the local jails to which detainees are shuttled at night provide no incoming or outgoing mail for detainees, provide no paper or writing instruments to detainees, provide no law libraries accessible to class members, and provide no privacy for telephone conversations with legal representatives or potential legal representatives.  In addition, detainees are shuttled back and forth from B-18 at varying hours of the day and night.  As a

-15-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1    result, Plaintiffs and class members often have no meaningful access to the courts
2    and have difficulty obtaining representation by counsel while they remain
3    incarcerated at B-18.

4          48.   In addition, when detainees are taken from B-18 to a local jail,
5    they must lock up all of their personal property at B-18, including legal papers that
6    they need to prepare their legal claims. As a result, Defendants often do not
7    provide detainees access to their legal papers for extended periods of time.

8          49.   Defendants provide class members at B-18 absolutely no access
9    to incoming or outgoing mail services. Defendants do not allow class members at
10    B-18 to send or receive any letters, including letters that constitute legal mail. This
11    blanket denial of access remains in place even when detainees claim that they have
12    to send mail to litigate their cases, and even when the mail in question is going to or
13    coming from their attorneys or courts. When Plaintiff Chavez Flores needed to
14    mail the appeal of his removal order while he was incarcerated at B-18, ICE
15    officials refused to allow him to mail it, and informed him that even if he filed the
16    appeal through assistance he could not receive mail from the court at B-18.

17          50.   Defendants provide detainees with absolutely no paper or
18    writing utensils at B-18 or the local jails. Requests for such materials are denied by
19    B-18 and local jail staff. As a result, detainees cannot correspond with family
20    members, the court, or counsel.

21          51.   The telephones at B-18 are not equipped with privacy panels.
22    Instead, each holding cell has a phone in the cell. Because Defendants regularly
23    incarcerate detainees in the hold rooms with forty or more other detainees, it can be
24    impossible to have a private legal call with an attorney. At times, none of the
25    telephones at B-18 are in working order.

26          52.   Attorney visitors to B-18 often have lengthy wait times before
27    they can meet with a detainee due to the shuttling program. In part because
28    detainees do not know when they will be shuttled back and forth, it is extremely

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1  difficult for detainees to inform attorneys of when they can conduct a legal visit. In

2  addition, the hours during which visits can occur are extremely restricted.

3  Detainees often do not arrive from the local jails until 10:30 a.m. or later, and

4  officials at B-18 stop allowing attorneys to visit clients in the mid-afternoon,

5  around 3:30 p.m. Upon information and belief, the jails do not allow detainees to

6  receive visitors. Thus, detainees at B-18 at times only have a window of a few

7  hours a day, and none on the weekends, in which they can receive legal visits from

8  attorneys.

9         53.    Defendants have not instituted any procedure at B-18 by which

10  detainees can lodge complaints concerning any problems at the facility, including

11  those described in this Complaint. Defendants lack any type of administrative

12  grievance procedure to address problems such as the lack of soap, toothbrushes, and

13  showers, among others.

14         54.    Because of Defendants' practices, Plaintiffs and class members

15  have suffered concrete injuries, including, but not limited to, the fact that they have

16  been unable to: (1) file pleadings in their removal cases or to receive legal mail,

17  (2) research legal claims related to their cases, (3) have private phone conversations

18  with their counsel, and (4) challenge the legality of their detention and the

19  conditions of their confinement.

20  **III.    FAILURE TO PROVIDE TIMELY BOND DETERMINATION**

21  **PROCESSES**

22         55.    Defendants detain a subclass of Plaintiffs at B-18 who are

23  initially detained by ICE without a warrant. This sub-class of detainees is entitled

24  to a determination as to their custody status within forty-eight hours, and to a

25  prompt re-determination of that status by an Immigration Judge.

26         56.    Defendants detain this subclass of Plaintiffs at B-18 for over

27  forty-eight hours, and sometimes as long as a week, before an immigration officer

28  makes a determination as to whether the individual should be detained. In some

-17-                COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

cases, even after the officer makes that determination, the decision is not communicated to the detainee by written notice explaining that the detainee has an opportunity to seek review of the decision before an Immigration Judge. And, even where Defendants provide such written notice, in fact, detainees often cannot obtain timely review before an Immigration Judge.

## IV.     VIOLATIONS OF THE *ORANTES* INJUNCTION

57.     Defendants routinely detain Salvadoran nationals at B-18. ICE does not detain Salvadorans separately from other nationalities.

58.     Defendants' failure to comply with the requirements of the *Orantes* injunction with respect to Salvadorans detained at B-18 has caused members of the *Orantes* class to suffer concrete injuries, including, but not limited to, the fact that they have been unable to: (1) file pleadings in their removal cases or to receive legal mail, (2) research legal claims related to their cases, (3) have private phone conversations with their counsel, and (4) challenge the legality of their detention and the conditions of their confinement.

59.     Defendants' failure to provide paper and writing utensils, law libraries, working telephones, and facilities to make private phone calls have resulted in concrete injuries to members of the *Orantes* class.

60.     Members of the *Orantes* class incarcerated at B-18 are not always provided with the required *Orantes* advisal in the manner specified by the injunction. Immigration authorities often make members of the *Orantes* class sign the *Orantes* advisal without being given an opportunity to understand what they are signing. Immigration authorities at B-18 at times inappropriately coerce members of the *Orantes* class when processing them. Authorities also often do not read the *Orantes* advisal in Spanish to members of the *Orantes* class who cannot read English, as required by the injunction. They also do not allow class members to

-18-

1   retain the *Orantes* advisal in their possession, especially at night or on weekends

2   when they are sent to local jails, which the injunction also requires.

3       61.     Defendants also do not provide members of the *Orantes* class at

4   B-18 with the list of free or low-cost legal services providers, as required. These

5   lists are not "freely available" at B-18, as the injunction requires. In addition,

6   members of the *Orantes* class are not allowed to retain this list in their possession,

7   especially at night or on weekends when they are sent to local jails, despite the

8   injunction's requirement.

9       62.     Plaintiff Castellano is afraid to return to El Salvador because he

10  fears being persecuted by gangs that the government is unwilling or unable to

11  control. However, he is unable to prepare a filing in his immigration case because

12  he cannot access a writing utensil, paper, a law library, or mail. In addition, he has

13  difficulty seeking representation by counsel because of the lack of working

14  telephones at B-18, the inability to make private phone calls when the phones do

15  work, and the fact that when he is at a local jail at night or over the weekend he

16  lacks any of his legal papers or a phone card with which to call attorneys. When he

17  expressed fear of returning to El Salvador during processing at B-18, the

18  immigration official processing Castellano told him that he would be deported to El

19  Salvador irrespective of whether he expressed a fear or not. Furthermore, he never

20  received a list of legal service providers, and one is not freely available to him at B-

21  18, so he faces the added difficulty of finding attorneys to contact.

22                              **CLASS ACTION ALLEGATIONS**

23      63.     Plaintiffs bring this class action on behalf of themselves and all

24  others similarly situated. The proposed Class is defined as follows:

25          All persons who are now or will be detained at B-18 (the "Class").

26      64.     Additionally, Plaintiffs bring this action on behalf of a subclass

27  of those who fall within the Class definition. The subclass is defined as follows

28  (the "Presentment Subclass"):

-19-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1     All detainees who are now or will be held at B-18 who have failed or

2     will fail to receive notice of a bond determination within 48 hours of

3     being taken into custody, and who have not had or will not have an

4     opportunity to contest that determination in a timely fashion before an

5     Immigration Judge.

6    65. Plaintiffs, members of the Class, and the Presentment Subclass

7 bring this action for equitable, declaratory, and injunctive relief pursuant to

8 subdivision (b)(2) of Rule 23 of the Federal Rules of Civil Procedure.

9    66. Plaintiffs are informed and believe and based thereon allege that

10 members of the Class and the Presentment Subclass are so numerous that individual

11 joinder of all of their members would be impracticable.  Joinder is also

12 impracticable because the population of detainees at B-18 is constantly changing,

13 because many class members are unaware of their rights, and, as detailed elsewhere

14 in this Complaint, because class members' access to legal services and

15 representation is hampered by the policies and practices of defendants complained

16 of herein.

17    67. There are many questions of law and fact common to the

18 representative Plaintiffs, the members of the Class, and the Presentment Subclass.

19 The claims of the named Plaintiffs are typical of the claims of the Class because the

20 named Plaintiffs have been subjected to or threatened with policies and procedures

21 that are identical or substantially similar to the policies and procedures to which the

22 class members have been subjected or with which the members of the Class have

23 been threatened.

24    68. The named Plaintiffs will fairly and adequately protect the

25 interests of the class.  There is no conflict between the named Plaintiffs and other

26 class members.  Moreover, Plaintiffs have retained counsel who are experienced in

27 class action litigation and can adequately represent the interests of the class

28 members as well as those of the named Plaintiffs.

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1        69.    Defendants have acted on grounds generally applicable to both

2    the named Plaintiffs and other class members, making appropriate final declaratory

3    and injunctive relief with respect to the members of the Class and the Presentment

4    Subclass as a whole.  The injuries suffered by the named Plaintiffs and other class

5    members as a result of Defendants' actions are capable of repetition yet may evade

6    review, thereby making individual and class relief appropriate.

7                   **LEGAL FRAMEWORK**

8    *I. Constitutional Obligations*

9            *A. Fifth Amendment – Conditions of Confinement*

10       70.    The Fifth Amendment protects civil detainees from the

11   deprivation of life, liberty, and property without due process of law.  *Bell v.*

12   *Wolfish*, 441 U.S. 520 (1979).  The Ninth Circuit has held that civil detainees must

13   be held in better conditions of confinement than pre-trial detainees, who are held as

14   part of the criminal process, although they have not been convicted of a crime.

15   *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (noting that "civil detainees

16   retain greater liberty protections than individuals detained under the criminal

17   process").  Conditions of confinement for civil detainees are unconstitutional when

18   they (1) are intended to punish, or (2) are excessive in relation to their non-punitive

19   purpose.  *Id.* at 931-32 ("[W]hen a [civil detainee] is confined in conditions

20   identical to, similar to, or more restrictive than, those in which his criminal

21   counterparts are held, we presume that the detainee is being subjected to

22   'punishment.'").

23           *B. Fifth Amendment – Access to Courts and Representation of*

24              *Counsel*

25       71.    The Fifth Amendment affords detainees the right to have

26   access to the courts to seek redress for violations of their constitutional rights.

27   *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).  "The fundamental constitutional

28   right of access to the courts requires prison authorities to assist inmates in the

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1   preparation and filing of meaningful legal papers by providing prisoners with

2   adequate law libraries or adequate assistance from persons trained in the law."

3   *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Thus, institutions may adopt differing

4   means of affording such access, but whatever means they adopt must provide

5   detainees "a reasonably adequate opportunity to present claimed violations of

6   fundamental constitutional rights." *Id.* at 825. This right only obligates the facility

7   to provide the tools that inmates need "in order to attack their sentences, directly or

8   collaterally, and in order to challenge the conditions of their confinement." *Lewis*

9   *v. Casey*, 518 U.S. 343, 355 (1996). Persons alleging a violation of this right must

10  show actual injury. *Id.* at 349. Civil detainees as well as criminal detainees have

11  the right of access to courts. *See, e.g., Orantes-Hernandez v. Meese*, 685 F. Supp.

12  1488, 1509 (C.D.Cal. 1988), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919

13  F.2d 549 (9th Cir. 1990).

14          72.     As this Court stated in *Orantes-Hernandez v. Meese*, "[a]liens

15  have both statutory and due process rights to retain counsel of their choice," and

16  "[r]egulations and practices that unjustifiably obstruct this representation must be

17  invalidated." 685 F.Supp. at 1509. The Immigration and Nationality Act affords

18  non-citizens a statutory right to representation by counsel at no expense to the

19  government in their removal proceedings, 8 U.S.C. § 1229a(b)(4)(A), and the Due

20  Process Clause of the Fifth Amendment protects this right. The government may

21  not interfere with a detainee's ability to obtain representation. *See Orantes-*

22  *Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990); *cf. Geders v. United*

23  *States*, 425 U.S. 80 (1976) (order barring attorney from speaking with client

24  overnight during trial violated right to counsel).

25              *C. First Amendment – Free Speech and Right to Petition*

26          73.     The First Amendment provides detainees and their

27  correspondents the right to receive mail. While the government may adopt

28  regulations that restrict a detainee's right to receive mail, they must be reasonably

-22-

1    related to a legitimate government interest. *Thornburgh v. Abbot*, 409 U.S. 401,

2    414 (1989) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Blanket prohibitions

3    of incoming mail are not reasonably related to any legitimate government interest,

4    and are therefore in violation of the First Amendment. *See generally Crofton v.*

5    *Roe*, 170 F.3d 957 (9th Cir. 1999).

6         74.    The First Amendment also provides detainees and their

7    correspondents the right to send mail.  The government may adopt regulations that

8    restrict a detainee's right to send mail as long as the regulation furthers an

9    important or substantial governmental interest unrelated to the suppression of

10   expression. *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).  In addition, the

11   government's limitation on the First Amendment must be no greater than necessary

12   for the protection of the particular interest involved. *Id.*

13        75.    The First Amendment provides detainees the right to petition the

14   government for redress of grievances. *O'Keefe v. Van Boening*, 82 F.3d 322, 325-

15   26 (9th Cir. 1996).  While the government may adopt regulations that restrict a

16   detainee's right to petition the government for redress of grievances, they must be

17   reasonably related to a legitimate government interest. *Turner v. Safley*, 482 U.S.

18   78, 89 (1987).

19              *D. Fourth and Fifth Amendment – Presentment*

20        76.    The Fourth Amendment protects individuals from unreasonable

21   seizures.  For a seizure to be reasonable, the person seized must have the

22   opportunity to seek a determination by a neutral and detached judicial officer that

23   continued detention remains justified within 48 hours of initial arrest. *See County*

24   *of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

25        77.    The Fifth Amendment protects individuals from unreasonable

26   incarceration.  For detention outside the criminal process to be consistent with the

27   Due Process Clause, it must be reasonable in relation to its purpose. *See generally*

28   *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

78.    Where the initial decision to detain has been made by an ICE official, governing regulations require that there be prompt review of that initial determination by an Immigration Judge, upon request. *See* 8 C.F.R. §§ 287.3(c), 1236.1(d), 1003.19.

*II. Requirements Created by the Orantes Injunction*

79.    The nationwide permanent injunction issued by this Court in *Orantes-Hernandez, supra,* includes specific provisions that govern the treatment by defendants of detained members of the *Orantes* class, who are all citizens and nationals of El Salvador eligible to apply for asylum who have been or will be taken into custody by the former INS and its successors, including Defendants. The injunction requires, among other things, that defendants: (1) take measures to ensure the privacy of attorney-client telephonic communications; (2) allow class members to receive and possess legal materials, including legal mail; (3) provide class members with adequate access to law libraries; (4) provide class members with access to writing materials; (5) refrain from employing coercion when processing class members; (6) provide class members with updated lists of low-cost or free legal service providers and make those lists freely available at detention locations; (7) provide class members with a specified *Orantes* advisal of rights; and (8) make working telephones available to detained class members. *See Orantes-Hernandez v. Holder,* Docket No. 82-1107 MMM(VBKx), Order of November 26, 2007 (setting out all terms of the injunction that are currently in effect).

## FIRST CLAIM FOR RELIEF

### Conditions of Detention: Access to Basic Personal Hygiene Facilities and Sanitary Products (Fifth Amendment Due Process Clause)

80.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

81.    Defendants are restraining or will restrain Plaintiffs' liberty. Accordingly, under the Fifth Amendment to the United States Constitution,

-24-

1  Defendants have a constitutional obligation to provide for Plaintiffs' health, safety,

2  and well-being while in ICE custody.

3     82.    Defendants have violated Plaintiffs' constitutional right to due

4  process by failing to provide basic personal hygiene facilities and sanitary products

5  to Plaintiffs while they are in ICE custody as described in the Complaint, including,

6  but not limited to, denial of access to soap, drinking water, toothbrushes and

7  toothpaste, sanitary products, basic medicine, showers, and clean detention

8  facilities.

9     83.    Defendants' actions have caused, are causing, and will cause

10  Plaintiffs irreparable injury in the form of deprivation of their fundamental rights.

11  <center>**SECOND CLAIM FOR RELIEF**</center>

12  <center>**Conditions of Detention:  Access to Clean Clothing**</center>
<center>**(Fifth Amendment Due Process Clause)**</center>
13

14     84.    Plaintiffs re-allege and incorporate by reference each and every

15  allegation contained in the preceding paragraphs as though fully set forth herein.

16     85.    Defendants are restraining or will restrain Plaintiffs' liberty.

17  Accordingly, under the Fifth Amendment to the United States Constitution,

18  Defendants have a constitutional obligation to provide for Plaintiffs' health, safety,

19  and well-being while in ICE custody.

20     86.    Defendants have violated Plaintiffs' constitutional right to due

21  process by failing to provide access to clean clothing or to laundry facilities or

22  supplies with which to wash their own clothing while Plaintiffs are in ICE custody,

23  as described in the Complaint.

24     87.    Defendants' actions have caused, are causing, and will cause

25  Plaintiffs irreparable injury in the form of deprivation of their fundamental rights.

26  //

27  //

28

## THIRD CLAIM FOR RELIEF

### Conditions of Detention:  Overcrowding and Access to Appropriate Sleeping Facilities (Fifth Amendment Due Process Clause)

88.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

89.    Defendants are restraining or will restrain Plaintiffs' liberty. Accordingly, under the Fifth Amendment to the United States Constitution, Defendants have a constitutional obligation to provide for Plaintiffs' health, safety, and well-being while in ICE custody.

90.    Defendants have violated Plaintiffs' constitutional right to due process by subjecting Plaintiffs to overcrowding and failing to provide adequate sleeping accommodations to Plaintiffs while they are in ICE custody, as described in the Complaint.

91.    Defendants' actions have caused, are causing, and will cause Plaintiffs irreparable injury in the form of deprivation of their fundamental rights.

## FOURTH CLAIM FOR RELIEF

### Conditions of Detention:  Access to Recreation (Fifth Amendment Due Process Clause)

92.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

93.    Defendants are restraining or will restrain Plaintiffs' liberty. Accordingly, under the Fifth Amendment to the United States Constitution, Defendants have a constitutional obligation to provide for Plaintiffs' health, safety, and well-being while in ICE custody.

94.    Defendants have violated Plaintiffs' constitutional right to due process by failing to provide recreational activities to Plaintiffs while they are in ICE custody, as described Complaint.

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

95.     Defendants' actions have caused, are causing, and will cause Plaintiffs irreparable injury in the form of deprivation of their fundamental rights.

## FIFTH CLAIM FOR RELIEF

### Access to Courts
### (Fifth Amendment Due Process Clause; 8 U.S.C. § 1231(g))

96.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

97.     The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees Plaintiffs a right of access to the courts.

98.     Defendants have violated Plaintiffs' and class members' rights to access the courts by housing detainees in facilities without any incoming or outgoing mail, paper or pens, or law libraries.

99.     Because of Defendants' practices, Plaintiffs have suffered concrete injuries, including, but not limited to, the fact that they have been unable to: (1) file pleadings and briefs in their removal cases and to receive legal mail related to their cases, and (2) research legal claims to defend against deportation and challenge the legality of their detention and conditions of their confinement.

100.    In addition, 8 U.S.C. § 1231(g) provides that the government shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.

101.    ICE's own Performance-Based National Detention Standards prohibit the Defendants' practices described above. First, ICE's Standard on Correspondence and Other Mail provides, *inter alia*, that "detainees will be able to correspond with their . . . legal representatives" and that "detainees will be permitted to send . . . Legal Mail . . . and incoming mail from these persons will be opened only in the presence of detainees (unless waived)." *See* ICE/DRO Detention Standards, at http://www.ice.gov/doclib/PBNDS/pdf/correspondence_and_other_mail.pdf.

-27-

102.   In addition, ICE's own Standard on Law Libraries and Legal Materials provides, *inter alia*, that "[d]etainees will have regular access (no less than five hours per week) to law libraries, legal materials and related materials." See ICE/DRO Detention Standards, at http://www.ice.gov/doclib/PBNDS/pdf/law_libraries_and_legal_material.pdf.

103.   Defendants' actions have rendered B-18 an "[in]appropriate" place of detention insofar as it operates in blatant violation of ICE's own Detention Standards with respect to access to the courts.

104.   Defendants' actions have caused, are causing, and will cause Plaintiffs and class members irreparable injury in the form of deprivation of their fundamental rights and violate Plaintiffs' and class members' rights to "appropriate places of detention."

### SIXTH CLAIM FOR RELIEF

**Representation of Counsel**
**(Fifth Amendment Due Process Clause; 8 U.S.C. §§ 1229a(b); 1231(g))**

105.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

106.   The Due Process Clause of the Fifth Amendment guarantees Plaintiffs the right to representation of counsel of their choice, at no expense to the government.

107.   Defendants have violated Plaintiffs' right to representation of counsel by denying them the ability to communicate with their counsel through the mail, unreasonably restricting their ability to meet with attorneys, and by denying them the ability to make private telephone calls.

108.   Plaintiffs also have a statutory right to representation of counsel at no expense to the government, 8 U.S.C. § 1229a(b), and a right to placement in an "appropriate" place of detention.  8 U.S.C. § 1231(g).

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

109.   As set forth above, ICE's own standards require unfettered mail communication between detainees and their counsel.  Similarly, ICE's own Standard on Telephone Access provides, *inter alia*, that "[f]or detainee telephone calls regarding legal matters, each facility shall ensure privacy by providing a reasonable number of telephones on which detainees can make such calls without being overheard by staff or other detainees."  *See* ICE/DRO Detention Standards, at http://www.ice.gov/doclib/PBNDS/pdf/telephone_access.pdf.

110.   Defendants' actions have rendered B-18 an "[in]appropriate" place of detention insofar as it operates in blatant violation of ICE's own Detention Standards with respect to the representation of counsel.

111.   Defendants' actions have caused, are causing, and will cause Plaintiffs and class members irreparable injury in the form of deprivation of their fundamental rights and violate Plaintiffs' and class members' rights to "appropriate places of detention."

112.   As a result of defendants' actions, Plaintiffs and class members have suffered, are suffering, and will continue to suffer irreparable injury.

## SEVENTH CLAIM FOR RELIEF

**Access to Mail (First Amendment Rights to Free Speech; 8 U.S.C. § 1231(g))**

113.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

114.   Defendants have a constitutional obligation under the First Amendment to the United States Constitution to provide Plaintiffs and class members with incoming and outgoing mail services.

115.   In addition, 8 U.S.C. § 1231(g) provides that the government shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

116.   ICE's own Performance-Based National Detention Standards provide that, *inter alia*, "the quantity of correspondence a detainee may receive or send at his or her own expense shall not be limited."  *See* ICE/DRO Detention Standards, Correspondence and Other Mail at http://www.ice.gov/doclib/PBNDS/doc/correspondence_and_other_mail.doc.

117.   Defendants maintain a practice of completely denying Plaintiffs and class members access to all incoming and outgoing mail, including legal mail. This practice violates Plaintiffs' and class members' First Amendment rights and their statutory right to an "appropriate place of detention."

118.   As a result of defendants' actions, Plaintiffs and class members have suffered, are suffering, and will continue to suffer irreparable injury.

## EIGHTH CLAIM FOR RELIEF

### Ability to Lodge Complaints (First Amendment Right to Petition the Government for Redress of Grievances)

119.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

120.   Defendants have a constitutional obligation under the First Amendment to the United States Constitution to provide Plaintiffs and class members a mechanism to petition the government for redress of grievances.

121.   Defendants lack any administrative grievance procedure, thereby violating Plaintiffs' and class members' constitutional rights under the First Amendment.

122.   As a result of defendants' actions, Plaintiffs and class members have suffered, are suffering, and will continue to suffer irreparable injury.

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

### NINTH CLAIM FOR RELIEF

**Violation of Permanent Injunction in *Orantes-Hernandez v. Holder***

123.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

124.    In *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488 (C.D. Cal. 1988), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990), this Court entered a permanent injunction governing the former INS's treatment of the class of citizens and nationals of El Salvador eligible to apply for asylum who have been or will be taken into custody by INS agents pursuant to 8 U.S.C. § 1357.  The injunction requires, *inter alia*, that the INS ensure the privacy of attorney-client communications; allow class members to receive and possess legal materials, including legal mail; provide class members with adequate access to law libraries; provide class members with access to writing materials; refrain from employing coercion when processing class members; provide class members with updated lists of low-cost or free legal service providers; provide class members with a specified *Orantes* advisal of rights; and ensure class members have access to working telephones.

125.    The proposed Plaintiff Class in this action includes individuals who are also members of the *Orantes* class, among them one of the named Plaintiffs.  As to those Plaintiffs, the *Orantes* permanent injunction is being violated by the policies and practices described in this Complaint.

126.    As a result of defendants' actions, Plaintiffs and class members have suffered, are suffering, and will continue to suffer irreparable injury.

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

### TENTH CLAIM FOR RELIEF

**Right to Custody Determination (Fourth Amendment Presentment Clause; Fifth Amendment Due Process Clause; 8 C.F.R. §§ 287.3(d); 1236.1(d); 1003.19) On Behalf of the Presentment Subclass**

127.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

128.    The Fourth Amendment provides Presentment Plaintiffs the right to a custody determination before a neutral judicial decision-maker within forty-eight hours of arrest.  The Fifth Amendment provides Presentment Plaintiffs with a right to no more detention than is reasonable.  Both of these rights encompass a right to notice of the initial custody decision within 48 hours, and a right to prompt review of the initial decision to detain where that determination has been made by an ICE officer.

129.    8 C.F.R. §§ 287.3(d), 1236.1(d), and 1003.19 all require that the Presentment Plaintiffs receive notice of the initial bond determination within forty-eight hours of arrest and prompt review of that determination by an immigration judge, where requested.

130.    Defendants have failed and continue to fail to provide the Presentment Plaintiffs with notice and an opportunity to seek review of the initial custody determination by an immigration judge within 48 hours of arrest.

131.    As a result of defendants' actions, Plaintiffs and class members have suffered, are suffering, and will continue to suffer irreparable injury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a.    Issue an order certifying this action to proceed as a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

b.    Appoint the undersigned as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

-32-

COMPLAINT FOR CLASSWIDE DECLARATORY AND INJUNCTIVE RELIEF

1           c.     Issue a judgment declaring that Defendants' policies, practices,

2 acts, and omissions described herein violate Plaintiffs' rights under the Constitution

3 of the United States, federal statutory and regulatory law, and the *Orantes*

4 injunction;

5           d.     Permanently enjoin Defendants, their subordinates, agents,

6 employees, and all others acting in concert with them from subjecting Plaintiffs to

7 the unconstitutional conditions described herein, and issue injunctive relief

8 sufficient to rectify those conditions, including:

9              i.     An order that Defendants impose an hourly time limit on the

10 total length of detention at B-18 and the jails, or, in the

11 alternative, that Defendants comply with the standards defined

12 by the Constitution and by 8 U.S.C. § 1231(g);

13           ii.    An order that Defendants provide Plaintiffs basic hygienic items

14 and sanitary conditions necessary during any length of

15 detention;

16          iii.    An order that Defendants provide Plaintiffs with adequate

17 sleeping facilities and conditions to ensure Plaintiffs can receive

18 an appropriate amount of rest each day, for any Plaintiff or

19 putative class member forced to sleep at B-18 or a local jail to

20 which B-18 detainees are shuttled;

21          iv.    An order that Defendants provide Plaintiffs incoming and

22 outgoing mail, pens and paper, a system for lodging complaints,

23 and privacy for telephone conversations with legal

24 representatives or potential legal representatives.

25           v.    An order requiring Defendants to make bond determinations for

26 Presentment Plaintiffs within 48 hours of their arrest and

27 provide them the opportunity to promptly seek review of that

28 determination before an immigration judge;

-33-

COMPLAINT FOR CLASSWIDE
DECLARATORY AND INJUNCTIVE RELIEF

1
     vi.    An order allowing monitoring of B-18 by Plaintiffs' attorneys to

2
          enforce the rectification of unlawful conditions of confinement;

3
     vii.   An order that Defendants maintain records of detainees' entry to

4
          and exit from B-18 and regularly provide those records to

5
          Plaintiffs' attorneys;

6
     e.    Grant Plaintiffs their reasonable attorney fees and costs pursuant

7
          to 28 U.S.C. § 2412, and other applicable law;

8
     f.    Grant such other and further relief as this Court deems just and

9
          proper.

10

11
DATED: April 1, 2009      ACLU OF SOUTHERN CALIFORNIA

12
          By: _Ahilan T. Arulanantham (by JW6)_

13
                AHILAN T. ARULANANTHAM

14
          NATIONAL IMMIGRATION LAW CENTER

15

16
          By: _Linton Joaquin (by JW6)_

17
                LINTON JOAQUIN

18
          PAUL, HASTINGS, JANOFSKY & WALKER LLP

19

20
          By: _W. Oliver Besson_

21
                W. OLIVER BESSON

22
          Attorneys for Plaintiffs
JULIO CASTELLANO, ABELARDO CHAVEZ

23
FLORES, RAMON GONZALEZ, and ALLA
SUVOROVA, on behalf of themselves and all

24
others similarly situated, and NATIONAL
LAWYERS GUILD

25

26
LEGAL_US_W # 61409728.1

27

28

                                COMPLAINT FOR CLASSWIDE
                 -34-   DECLARATORY AND INJUNCTIVE RELIEF

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO CASTELLANO, ABELARDO CHAVEZ FLORES, RAMON GONZALEZ, ALLA SUVOROVA, on behalf of themselves and all others similarly situated, and NATIONAL LAWYERS GUILD, | CASE NUMBER: |

**Plaintiffs,**

vs.

CV09-2281 PA VBKx

JANET NAPOLITANO, in her capacity as Secretary of the Department of Homeland Security; ERIC H. HOLDER JR., in his capacity as Attorney General of the United States; JOHN P. TORRES, Acting Assistant Secretary, U.S. Immigration and Customs Enforcement; JAMES T. HAYES JR., Director, Office of Detention and Removal Operations, ICE; ROBERTO ARMENDARIZ, Assistant Field Office Director, ICE,

**SUMMONS IN A CIVIL ACTION**

**Defendants.**

**TO: THE ABOVE-NAMED DEFENDANT(S):**   Janet Napolitano, Eric H. Holder Jr., John P. Torres, James T. Hayes Jr., Roberto Armendariz.

**YOU ARE HEREBY SUMMONED** and required to file with this court and serve upon PLAINTIFFS' ATTORNEYS:

Ahilan T. Arulanantham (SB # 237841)
Marisol Orihuela (SB # 261375)
ACLU Foundation of Southern California
1313 W. 8th Street
Los Angeles, CA 90017
Tel: (213) 977-5211
Fax: (213) 977-5299

Linton Joaquin (SB # 73547)
Karen C. Tumlin (SB # 234691)
National Immigration Law Center
3435 Wilshire Blvd., Suite 2850
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911

W. Toliver Besson (SB # 50123)
Jamie Broder (SB # 75927)
James W. Gilliam, Jr. (SB # 229479)
Eleanor K. Mercado (SB # 240028)
Amanda B. Gilman (SB # 255573)
Paul, Hastings, Janofsky & Walker LLP
515 S. Flower Street, 25th Floor
Los Angeles, CA 90071
Tel: (213) 683-6000
Fax: (213) 627-0705

Judy Rabinovitz
(jrabinovitz@aclu.org)
American Civil Liberties Foundation
Immigrants' Rights Project
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2618
Fax: (212) 549-2654

an answer to the complaint which is herewith served upon you within 60 days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

CLERK, U.S. DISTRICT COURT

DATE: ___APR - 1 2009___

By _Natalie Mengaria_

Deputy Clerk

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>JULIO CASTELLANO, ABELARDO CHAVEZ FLORES, RAMON GONZALEZ, and ALLA SUVOROVA, on behalf of themselves and all others similarly situated, and NATIONAL LAWYERS GUILD | **DEFENDANTS**<br>Janet Napolitano, in her capacity as Secretary of the Department of Homeland Security; Eric H. Holder Jr., in his capacity as Attorney General of the United States; John P. Torres, Acting Assistant Secretary, U.S. Immigration and Customs Enforcement; James T. Hayes, Jr., Director, Office of Detention and Removal Operations, ICE; Roberto Armendariz, Assistant Field Office Director. |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>ACLU Foundation of Southern California<br>1313 W. 8th Street, Los Angeles, CA 90017<br>(213) 977-5211 [Counsel Listed on Separate Page] | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
United States Constitution; 8 U.S.C. 1229(B) - action to remedy the egregious statutory and constitutional violations occurring at an immigration detention facility

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

Note: ☑ 440 Other Civil Rights is marked.

## CV09-2281

**FOR OFFICE USE ONLY:**    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                           CIVIL COVER SHEET                                Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

VIII(a). **IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s): _____

VIII(b). **RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes

If yes, list case number(s): Orantes-Hernandez v. Holder, Docket No. 82-1107-MMM(VBKx) (C.D. Cal.); Orantes v. Hernandez-Meese, No. CV-82-1107KN

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date April 1, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**COUNSEL FOR PLAINTIFFS:**

AHILAN T. ARULANANTHAM (SB# 237841)
(aarulanantham@ACLU-SC.ORG)
MARISOL ORIHUELA (SB# 261375)
(morihuela@ACLU-SC.ORG)
ACLU OF SOUTHERN CALIFORNIA
1313 W. 8th St.
Los Angeles, CA 90017
Tel: (213) 977-5211
Fax: (213) 977-5299

LINTON JOAQUIN (SB# 73547)
(joaquin@nilc.org)
KAREN C. TUMLIN (SB# 234691)
(tumlin@nilc.org)
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 2850
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911

W. TOLIVER BESSON (SB# 50123)
(toliverbesson@paulhastings.com)
JAMIE BRODER (SB# 75927)
(jamiebroder@paulhastings.com)
JAMES W. GILLIAM, JR. (SB# 229479)
(jamesgilliam@paulhastings.com)
ELEANOR K. MERCADO (SB # 240028)
(eleanormercado@paulhastings.com)
AMANDA B. GILMAN (SB # 255573)
(amandagilman@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 S. Flower St., 25th Floor
Los Angeles, CA 90071
Tel: (213) 683-6000
Fax: (213) 627-0705

JUDY RABINOVITZ
(jrabinovitz@aclu.org)
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2618
Fax: (212) 549-2654

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

### CV09- 2281 PA (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.